JOHN V. SIGNELL, Plaintiff, *v.* JAMES G. WALLACE, as Commissioner of Buildings, Defendant.
(Five cases.)

(Supreme Court, New York Special Term, August, 1901.)

Tenement House Act for cities of the first class — Police power — Unreasonable requirement as to houses for which plans had been filed when the unamended act took effect — L. 1901, ch. 334, § 4, amd. ch. 555.

Section 4 of the new Tenement House Act (L. 1901, ch. 334, in effect April 12, amd. ch. 555, in effect April 25) providing in substance that in cities of the first class an incomplete tenement-house, for which plans complying with the law existing at the time of filing had been filed with the city department of buildings on or before April 10, 1901, for which excavation had been commenced on or before June 1, 1901, after official approval of the plans, and which was built in accordance with the law existing at the time of such filing, should be subject to such provisions only of the new statute as affected tenement-houses existing at the time of its passage, is a valid exercise of the police power, but the further requirement, that the first tier of beams of such a tenement-house must have been set on or before Aug. 1, 1901, is an unreasonable and oppressive exercise of that power and is therefore invalid.

MOTIONS to continue temporary injunctions restraining the defendant from interfering with the plaintiffs in the construction of certain buildings provided that said buildings are built in accordance with the laws in force prior to the 10th day of April, 1901, and in accordance with the plans and specifications as filed and approved by the Commissioner of Buildings for the Boroughs of Manhattan and The Bronx and restraining him from enforcing any of the provisions of chapter 334 of the Laws of 1901 known as the " Tenement House Act " as against the plaintiffs.

Wechsler & Burstein, for plaintiffs.

John Whalen, Corporation Counsel (Samuel J. Parmenter and Charles J. McCafferty, of counsel), for defendant.

O'GORMAN, J. Section 4 of the new Tenement-House Act, which became a law on April 12, 1901, declared that tenement houses upon which work had been actually commenced after approval of the plans by the department of buildings should be subject only to the provisions affecting existing tenement houses. It will be noticed that this section offered no protection to persons who had already filed plans which were awaiting examination and approval on the day the new law went into effect. In an attempt to remedy this omission it is claimed the Legislature exceeded its powers in passing on April 25, 1901, an amendment (ch. 555) to section 4 so that the same reads as follows: " Buildings in process of erection.—Section 4.—A tenement house not now completed, but the excavation for which shall have been commenced in good faith on or before the 1st day of June, 1901, after approval of the plans therefor by the department of buildings, and the first tier of beams of which shall have been set on or before the 1st day of August, 1901, shall be subject only to the provisions of this act affecting now existing tenement houses; provided that the plans for the said house were filed in said department on or before the 10th day of April, 1901, and were in accordance with the laws in force at the time of filing, and that the building is built in accordance with such laws." In the five cases before the court it is conceded that the work was commenced in good faith before June 1, 1901. In none of the cases, however, was the first tier of beams completely set by August 1, 1901, and this situation was due to strikes and other causes beyond the control of the builders. The plaintiffs insist that this requirement touching the setting of the first tier of beams before August 1, 1901, was an oppressive and unreasonable enactment, and, therefore, invalid. This provision must be upheld, if at all, as an exercise of the police powers of the State, but these powers have certain limitations, and cannot be used arbitrarily without regard to private rights. Enactments made in the exercise of this power must be reasonable, and tend in some plain and appreciable manner towards the accomplishment of the objects which the Legislature has the right to protect under the exercise of this power. Where the exaction is excessive, unfair,

42

oppressive and unreasonable, and under the forms of law confiscates private property, the constitutional rights of the citizen are invaded, and the act will be condemned by the courts. The requirement in the amended act that work be commenced in good faith before June 1, 1901, in order to secure for the builders the benefits of the act relating to existing tenements is a valid exercise of the police power, but the provision arbitrarily requiring that the first tier of beams be set by August 1, 1901, must be pronounced invalid. It was certainly as unreasonable as it was an unnecessary means of attaining the main object of the act. It had no direct tendency towards the accomplishment of the main purpose of the legislation. If the work was begun in good faith by June 1, 1901, and that it was is conceded, the public welfare was sufficiently safeguarded and there is no reason for the imposition of penalties for not progressing with the work by arbitrary stages. It is claimed and, not disputed, that these plaintiffs will lose large sums of money if they should now be required to make the changes necessary to conform to the laws now in force. The new Tenement House Act makes radical changes in the nature, method, style and class of materials, and in the Signell building it is averred, and not denied, that if compelled to change the building to conform to the laws now in force upwards of $70,000 worth of work actually done and materials furnished will be rendered absolutely useless, to say nothing of the liability incurred by the owner in other contracts. The same is substantially true of all the plaintiffs. If the Legislature had the right to impose such a restriction upon the builders it might, with equal propriety, declare that the second or third tier should be completed by a specified date. The Signell case offers a good illustration of the unreasonable features of this provision. Signell's plans were actually approved and permit granted under the old law on April 8, 1901, four days before the new act became a law. He is building a row of houses on Central Park West, from Ninetieth to Ninety-first street. The first tier of beams has been laid to the extent of about one-half of the block, but owing to the non-delivery of iron material the setting of the other half of the first tier was not completed by August 1, 1901. Although delayed in this respect, he has made other progress in the work so that the walls were up to almost the second tier, and the entire job much further advanced than if the first tier had been completely set. To enforce such a

law, under such circumstances, with such disastrous consequences to the citizen, would be an act of spoliation under judicial sanction. Motions to continue the temporary injunctions *pendente lite* are granted.

Motions granted.